IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTIONS    NO. 2:14-cv-182 (JGW)
                          NO. 2:14-cv-183 (JGW)

MIRANDA SANDERS
TARA JOHNSON                                           PLAINTIFFS
SAMANTHA SMITH

V.

BRANDON MAUPIN                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This is a § 1983 case alleging claims under the Fourth Amendment through the Fourteenth Amendment. There are also pendant state law claims for malicious prosecution and assault and battery.

**I. Facts**

The facts of this case date back to January 2013, when Kentucky State Police Trooper Brandon Maupin began using a confidential informant to make controlled drug purchases in and around Gallatin County, Kentucky. (*See* Doc. 23-1, PageID# 112).[1] The confidential informant made 16 purchases over the course of five months. (Doc. 50-8 in 14-182). In each instance, Maupin followed a formula. The confidential informant called him on a state-issued phone; Maupin then drove to a meeting point in an unmarked car in plain clothes with another trooper accompanying him in the passenger seat; he picked up the informant, gave her money, turned on a tape recorder and placed it on the informant's person, and drove the informant to the location of the buy. (Doc. 23-1, PageID# 99–101, 103, 105, 138, 179). After each buy, Maupin transferred

---

[1] All citations to the record are to Case No. 182, unless otherwise noted.

the audio recording to a compact disk and sent the alleged narcotics the informant purchased to the lab for narcotics testing. (*Id*. at 99, 121).

In nine of the 16 controlled buys, the informant purchased narcotics. (Doc. 50-8). But in seven of the buys, the lab results came back showing that the substance the informant turned over to Maupin was not actually a narcotic. (*Id*.). The three Plaintiffs in the two cases presently before the Court are among those seven instances in which the testing showed that no narcotics were involved.[2]

1. **Controlled buy events.**

*Sanders*

On the morning of January 17, 2013, Maupin received a phone call from the confidential informant. (*See* Doc. 50-2). The informant claimed she could purchase 0.2 grams of heroin from Miranda Sanders for $40. (*Id*.). Maupin drove the informant to the residence of Christina Balsinger, on U.S. 127 southeast of Warsaw. (Doc. 23-1, PageID# 128; Doc. 50-1, PageID# 1211). Maupin and the confidential informant had purchased narcotics from Balsinger five days earlier. (Doc. 50-6; Doc. 34-1 in Case No. 14-183).

The informant went into the residence for approximately 10 minutes and spoke with someone who is not audible from the recording. (Doc. 23-1, PageID# 165; Doc. 50-2). The audio recording does not include Sanders' name. (Doc. 23-1, PageID# 165). The only evidence that Sanders was present comes from the informant's statement. (*Id*. at 139).

The informant returned to the vehicle and did not say anything. (Doc. 50-2; *see also* Doc. 23-1, PageID# 166 (Maupin stating he based his report on the informant's statements upon returning to the vehicle)). Maupin stated that the informant returned with "a cellophane wrapper

---

[2] The other four instances in which the substance the informant purchased was not narcotics did not result in civil actions. Therefore, this Court will not discuss those cases.

containing two pieces of paper with a brown substance consistent with heroin." (Doc. 50-2; *see also* Doc. 23-1, PageID# 141). Maupin sent those alleged narcotics to the Kentucky State Police lab for testing. On February 22, 2013, the lab concluded there were "no controlled substances" in the items the informant gave Maupin. (Doc. 24-4, PageID# 506 in Case No. 14-183). Contrary to Maupin's initial assertion that there was a brown substance in the wrapper, and contrary to the informant's alleged attempt to purchase 0.2 grams of heroin, the lab only had "yellow powder weighing approximately [0.077 grams]." (*Id.*)

*Smith*

On January 30, 2013, Maupin received a similar call from the informant, claiming she could buy 0.2 grams of heroin for $40 from Samantha Smith. (Doc. 50-11, PageID# 1315). Maupin, another trooper, and the informant drove to Smith's residence, where the informant purchased a folded piece of white paper containing a brown substance consistent with heroin. (*Id.* at 1316). On April 24, 2013, the Kentucky State Police lab concluded that the substance the informant purchased did not contain any controlled substance. (Doc. 24-4, PageID# 505 in Case No. 14-183).

*Johnson*

On May 15, 2013, the informant called Maupin and said she could buy 0.3 grams of heroin from Tara Johnson for $60. (Doc. 50-12, PageID# 1329, 1332). Maupin, another trooper, and the informant drove to an apartment owned by Sue Ann Peg and Jerry McGuire in Warsaw. (Doc. 24-1 in Case No. 14-183). The audio recording of the more than 15-minute conversation includes some small talk between the informant, a male voice, and a female voice. (*Id.*). The informant then returned to the vehicle and gave Maupin "a small clear plastic bag" that "contained three pieces of foil" containing a "brown solid substance" and labeled "20." (Doc. 50-12, PageID#

1333). On June 19, 2013, the Kentucky State Police lab concluded that the "tan chunky substance" contained no controlled substances. (Doc. 24-4, PageID# 507 in Case No. 14-183).

**2. Subsequent events.**

Many of Maupin's cases went to a grand jury on April 8, 2013. (Doc. 23-1, PageID# 151; Doc. 50-1, PageID# 1217). But the Sanders and Smith cases, which both occurred in January, were not among them—in part because the lab results were allegedly not back. (Doc. 50-11, PageID# 1320). Instead, those cases carried forward into the summer.

On July 4, 2013, Maupin met with Assistant Gallatin County Attorney Kurt Kruthoffer. (Doc. 50-12, PageID# 1336). They discussed both the Johnson and the Smith cases. Maupin left the meeting concluding that the Kentucky State Police needed to make a second controlled buy before they could go to a grand jury with charges against Johnson. (Doc. 50-12, PageID# 1336).

A few weeks later, on July 25, 2013, Maupin met with Kruthoffer again, and discussed the Sanders case. (Doc. 23-1, PageID# 153). For the first time, he learned the lab test showed no narcotics. (*Id*. at 153–54). Kruthoffer recommended charging Sanders with trafficking in a simulated controlled substance. (*Id*. at 157; Doc. 50-1, PageID# 1218). So Maupin attempted to prepare a complaint for that charge. (Doc. 23-1, PageID# 157 - 58).

There was no action in any of the three cases until October 14, 2013, when Maupin once again spoke with Kruthoffer. (Doc. 50-11, PageID# 1321). He was planning a "Black Friday" raid on drug offenses in the Gallatin County area for November 1, 2013. (Doc. 23-1, PageID# 188; Doc. 45-2, PageID# 1080–81).

In that conversation, Kruthoffer reminded Maupin that the Sanders drug test came back negative. (Doc. 23-1, PageID# 187). Maupin also learned for the first time that the tests for both Smith and Johnson were negative. (Doc. 50-11, PageID# 1321; Doc. 50-12, PageID# 1337). Like

in the Sanders case, Maupin intended to pursue a charge for trafficking in a simulated substance. (*Id*.).

Yet, Maupin encountered an issue preparing the complaints and went to Assistant Gallatin County Attorney William Leger for assistance on October 31, 2013. (Doc. 23-1, PageID# 159). This was more than two weeks after Kruthoffer told Maupin that the lab tests in the Sanders, Smith, and Johnson cases all showed no controlled substances. Still, Maupin told Leger that he "would like to be able to charge with trafficking in heroin" in at least the Smith and Johnson cases. (Doc. 45-2, PageID# 1077). Leger—who also knew the drug test showed no narcotics (*Id*. at 1077)— sat down with Maupin and typed out a complaint for the Smith and Johnson cases. (*Id*. at 1072). He then had Maupin read over the complaint for accuracy. (*Id.* at 1074–75). Leger believed that if "the person [who] trafficked the substance did not know that it was not heroin at the time they did it, that they could probably still be charged" with trafficking in heroin. (*Id.* at 1078). Leger wanted to "charge a trafficking in controlled substance, first degree, and plead" the charge down "before it went to grand jury." (Doc. 23-1, PageID# 194, 199). Leger testified that it is possible he had never encountered a case involving trafficking in a simulated controlled substance before October 31, 2013. (Doc. 45-2, PageID# 1119).

The result led Maupin to sign a statement he knew to be false, and which led directly to indictments against Smith and Johnson. On October 31, 2013, Maupin signed a criminal complaint affidavit stating that Johnson sold heroin under two grams. (Doc. 50-9, PageID# 1310). Maupin later signed a warrant of arrest for Johnson, repeating this statement. (Doc. 50-12, PageID# 1339). On November 1, 2013, Maupin signed a warrant of arrest stating that Samantha Smith sold heroin under two grams. (Doc. 50-10, PageID# 1311).

Maupin acknowledges the information in those documents he signed was not true. (Doc. 23-1, PageID# 194–95). But he admits he willingly signed the documents, and was not forced to do so. (Doc. 23-1, PageID# 193). Indeed, he testified that he was "frequently" asked to sign incorrect affidavits. (*Id*. at 198).

The Commonwealth dismissed Smith's case on February 4, 2014 at the pretrial conference. (Doc. 50-16). It later dismissed Johnson's case on April 22, 2014, at a hearing to address outstanding motions. (Doc. 50-15). At that hearing, Gallatin County Attorney John "Spike" Wright said:

> I've known [Johnson] probably all her life. I've listened to the audio probably three times . . . I don't believe she was present. . . . It is hard to even tell whether there was a transaction. But clearly the confidential informant states that she got the substance from Tara Johnson. But that couldn't be physically possible. And I think there is no way I could move forward with that case. . . . She wasn't, as best I can tell, [present]. The apartment owner came to my office a couple of months ago and said [Johnson] had never been in his apartment before. . . . We can't go forward with the evidence that I've seen. . . . The best I could tell from what I have gathered is there was probably some animosity between [the confidential informant] and Ms. Johnson.

(Doc. 27 in Case No. 14-cv-183).

The Sanders case resolved slightly differently. Instead of signing an inaccurate statement, on October 31, 2013, Maupin signed a complaint that stated Sanders "sold a simulated controlled substance." (Doc. 50-1, PageID# 1223). The charge for trafficking in a simulated controlled substance against Sanders was dismissed on February 4, 2014. (Doc. 50-1, PageID# 1226).

Smith and Johnson—the two Plaintiffs who were charged with trafficking in heroin—filed a joint complaint on October 23, 2014, seeking relief for false arrest, malicious prosecution, wrongful arrest, assault and battery, and punitive damages. (Doc. 1 in 14-183). Sanders filed a separate complaint on the same day in a separate case, seeking the same relief. (Doc. 1).

Following discovery, both cases are now ripe for review on summary judgment.

**II. Analysis**

    **A. Probable cause determinations.**

Every claim in all three cases presently before the Court rests on the question of probable cause, so the Court will address it at the outset.

        **1. Constitutional standard.**

The Fourth Amendment proscribes the seizure of a person except "upon probable cause." U.S. Const. amend. IV.[3]  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Miller v. Sanilac County*, 606 F.3d 240, 250 (6th Cir. 2010)(citing *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009)). Though an arrest based on a facially valid warrant approved by a magistrate provides a complete defense, this defense can be overcome by showing that the Defendant "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood" and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

        **2. No false statements against Sanders.**

Maupin did not make any false statements against Miranda Sanders. Instead, he signed a statement that Sanders had violated KY. REV. STAT. § 218A.350 by trafficking in a simulated controlled substance. At the time he signed that statement, Maupin knew that the confidential informant said she could purchase heroin from Miranda Sanders at Christina Balsinger's residence, he had driven the confidential informant to Balsinger's residence, and the informant returned from the residence with substances that matched the definition of a simulated controlled substance.

---

[3] The Fourth Amendment is applied here through the Fourteenth Amendment.

7

Though it is true that Sanders was not affirmatively identified on the audio recording, the context of the transaction, occurring in a manner consistent with the informant's statement, lends support for a reasonable officer in Maupin's position to believe the informant acquired simulated controlled substances from Sanders inside the residence. Since that was the substance of the statement Maupin signed against Sanders, Maupin did not show any disregard for the truth regarding Sanders. And he therefore acted with probable cause regarding Sanders.

As this opinion will explain below, this determination of probable cause decides all of Sanders' claims, and leads to a grant of summary judgment for Maupin in that case.

### 3. Even if Maupin acted with reckless disregard for the truth regarding Johnson and Smith, that is not determinative of a lack of probable cause.

Maupin *did* make a knowingly false statement regarding both Johnson and Smith when he signed affidavits stating Johnson and Smith trafficked in a controlled substance, even though he knew neither had done so. That constitutes a "knowingly and deliberately" false statement that was "material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305.

As the Supreme Court recently noted, "a judge's probable-cause determination [] predicated solely on a police officer's false statements" lacks probable cause and creates a Fourth Amendment concern. *Manuel v. City of Joliet*, ___ U.S. ___, 137 S. Ct. 911, 918 (2017)(noting there was no probable cause when evidence showed two negative tests for narcotics, but officers signed false statement saying narcotics were present). Yet, if the initial warrant and its probable cause determination was based on evidence beyond just the false statement, the false statement may not be determinative on its own. *See Id.* at 920 n. 8 (noting that a Fourth Amendment violation occurs "if the proceeding is tainted . . . **and** the result is that probable cause is lacking")(emphasis added).

Here, that means there could still be probable cause if the confidential informant's statements identifying Smith and Johnson as narcotics dealers were sufficient to constitute probable cause. (Doc. 23-1, PageID# 166 (Maupin stating he based his report on the informant's statements upon returning to the vehicle)).

### 4. This case comes down to a determination of the confidential informant's credibility, and whether she alone is sufficient to establish probable cause against Johnson and Smith.

Even though Maupin admittedly made a false statement, that alone is not sufficient to show that the Commonwealth lacked probable cause to issue an arrest warrant for Johnson and Smith. Instead, probable cause can still be present, even when the officer has made a false statement. *Manuel*, 137 S. Ct. at 920 n. 8 (noting that a Fourth Amendment violation occurs "if the proceeding is tainted . . . **and** the result is that probable cause is lacking")(emphasis added).

Here, if there is to be probable cause from any other source beyond Maupin's statement, it would come from the identifications that the confidential informant made of Johnson and Smith on the dates she allegedly attempted to purchase narcotics. "A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). But "[p]robable cause is created only by eyewitness allegations that are *reasonably trustworthy*, and thus probable cause does *not* exist where there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521–22 (6th Cir. 2016)(quoting *Wesley v. Campbell*, 779 F.3d 421, 429–30 (6th Cir. 2015)). There must be an "indicia of trustworthiness and reliability" to give the eyewitness some credibility; otherwise it is a "mere allegation." *Id*. at 521–22; *see also Wesley*, 779 F.3d at 429.

Here, there is a material question of fact whether Maupin should have suspected the confidential informant was unreliable. The record reflects an antagonistic relationship between Johnson and the confidential informant. (Doc. 27 in Case No. 14-183). Neither Johnson's nor Smith's name or voice are heard on the audio recordings, (Doc. 24-1; Doc. 24-2), and the Gallatin County Attorney said he did not think Johnson was present at the alleged sale. (Doc. 24-3). In all, seven of the 16 controlled buys involving the confidential informant came back negative for narcotics. (Doc. 50-8). Across those 16 cases, there are some discrepancies between the tapes and the informant's statements. (*See, e.g.*, Doc. 54-1 (informant claims she is purchasing from Chad Franks, but enters the house looking for Christina Balsinger); Doc. 54-2 (informant returned to the vehicle with fewer alleged narcotics than the audio indicates she should have had)). Further, in Johnson's case, the alleged sale did not occur at her residence, and there is no indication she was ever at the apartment where the alleged transaction took place.

Therefore, the circumstantial evidence certainly calls into question the informants' statements that she interacted with and purchased a substance from Johnson and Smith on the dates at issue in this case. *C.f. Legenzoff v. Steckel*, 564 F. App'x. 136, 143 (6th Cir. 2014)(law enforcement utilized two independent identifications). A jury could reasonably conclude that the confidential informant's representations to Maupin that Smith and Johnson were present at the alleged sales were not reliable, and therefore not sufficient to support probable cause.

**B. Wrongful arrest.**

To make out a wrongful arrest claim, a Plaintiff must show that the officer lacked probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Therefore, this claim rests entirely on the above determination. Since there was probable cause against Sanders, her wrongful arrest

claim fails. But because there is a triable question of fact on probable cause against Johnson and Smith, their wrongful arrest claims survive.

**C. Malicious prosecution.**

**1. The constitutional standard.**

Plaintiffs raise a constitutional claim because "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has made, influenced, or participated in the decision to prosecute the plaintiff by, for example, knowingly or recklessly making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017)(internal quotations omitted)(citing *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)); *see also Malley v. Briggs*, 475 U.S. 335, 340–45 (1986). In defense, Maupin raises a qualified immunity argument.

To address that Constitutional concern, as required by the first prong of the qualified immunity inquiry, this Court must essentially address the merits of the malicious prosecution and wrongful arrest claims. *See King*, 852 F.3d at 580. As the Sixth Circuit has noted, whether there was a Constitutional violation in these types of cases depends—at least in part—on whether there was probable cause to make the arrest. So the Court must address the probable cause question when it considers qualified immunity, even though it goes to the merits of the claim. *Id*.

**2. The merits.**

The test for malicious prosecution in the Sixth Circuit is:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) **there was a lack of probable cause for the criminal prosecution**; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

11

*Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)(emphasis added)(citing *Sykes*, 625 F.3d at 308-09). Plaintiffs must meet all four of those prongs.

As mentioned above, there was adequate probable cause to prosecute Sanders, but probable cause is a question of fact for a jury as to Johnson and Smith. Since that prong of the malicious prosecution test must go to a jury as to Johnson and Smith, and because the other three prongs are straightforward, this Court will deny Maupin summary judgment as to Johnson and Smith's malicious prosecution claims. If a jury determines that there was no probable cause to prosecute either, then Johnson and/or Smith will have met all four prongs of the malicious prosecution test, and will have a valid claim for relief against Maupin.[4]

### D. Maupin's arguments against the wrongful arrest and malicious prosecution claims.

Aside from arguing that probable cause was present, Maupin attempts to avoid the probable cause-based arguments by pointing the finger at Assistant County Attorney Leger and arguing he is not eligible for wrongful arrest or malicious prosecution claims. These claims are without merit.

#### 1. Non-party Leger would be entitled to absolute immunity.

Throughout Maupin's briefs, he consistently implies that Assistant Gallatin County Attorney William Leger was culpable here because Leger provided Maupin with poor legal advice. Plaintiffs have not sued Leger, nor did Maupin file a third-party complaint against Leger. (Doc. 1). If a prosecutor is merely carrying out his functions as an attorney and advocate for the Commonwealth, he is entitled to absolute immunity from civil actions. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). But if the prosecutor took the further step to act as a witness, he can be

---

[4] Plaintiffs also brought a state law malicious prosecution claim. That claim is identical to the federal claim, except it also adds a requirement of showing malice. Therefore, the result is the same; Sanders loses her claim because there was probable cause, but Johnson and Smith may have a claim if a jury finds Maupin lacked probable cause.

subject to liability if he provided a false statement as a witness. *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). Consistent with that concept, Maupin is the Defendant in this case, presumably because he provided a knowingly false statement. Leger may have provided bad legal advice, but he did not step outside his role as the prosecutor and into the role of a witness.

### 2. Maupin's argument that he is entitled to absolute immunity because he testified before a grand jury is without merit.

Maupin argues he is entitled to absolute immunity because he testified at Johnson, Smith, and Sanders' grand jury proceedings. He relies on *Rehberg v. Paulk*, 566 U.S. 356 (2012), which extends absolute immunity, rather than qualified immunity, to law enforcement officers for their acts as grand-jury witnesses. Yet, the Sixth Circuit recently expressly rejected this argument. It held that:

> where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017). In essence, the Court found that "filing of a sworn complaint and involvement in laying the groundwork for an indictment was not immune from suit simply because [the officer] also testified before the grand jury." *Id*. at 591 (internal citations and quotations omitted). Therefore, since Maupin admits he signed a knowingly false affidavit in support of Johnson and Smith's cases, Maupin is not entitled to absolute immunity.

### 3. Maupin is not saved from liability simply because he consulted with Leger before signing a false statement.

Alternatively, Maupin argues that he could not have committed a Fourth Amendment violation because he consulted with Leger and provided Leger with accurate information. *See Legenzoff*, 564 F. App'x. at 147. In *Legenzoff*, state police used a suggestive photo array to have two eyewitnesses identify a suspect. *Id*. at 138. The eyewitness statement formed the basis of probable cause to arrest the suspect on theft charges. *Id*. The Sixth Circuit reversed a denial of qualified immunity, reasoning that "no evidence has been presented that the officers turned over untruthful materials or that they showed reckless disregard for the truth to establish probable cause." *Id*. at 147. Critically, the prosecutors were aware of the potentially suggestive nature of the photo array, and still took the case forward to a judge. *Id*.

Just as the officers in *Legenzoff* allowed prosecutors to become aware of the facts of the case, including the suggestive nature of the photos, Maupin told Leger about the negative narcotics test results. *Legenzoff*, 564 F. App'x at 147 ("the court and the prosecution were well aware of any alleged deficiencies . . . and nonetheless believed that they satisfied the requirements of probable cause."). And the Sixth Circuit has noted that an "officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314.

But unlike the officers in *Legenzoff*, Maupin did not stop at merely turning over evidence to the prosecutor. Maupin went further by describing the situation to Leger, reading over the false statement that Johnson and Smith had trafficked in narcotics, and signing that statement. Whereas the officers in *Legenzoff* merely made a questionable decision to organize a potentially suggestive photo lineup, Maupin went further by making a knowingly false statement on the record to support probable cause. *Legenzoff* itself distinguished these kinds of "untruthful" statements and "reckless

14

disregard for the truth." *Id*. at 147; *see also Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)(liability can follow when an officer makes "materially false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest").

Therefore, Leger's knowledge of the facts does not alter the Court's analysis regarding Johnson and Smith.

### 4. Having probable cause for a lesser related offense is not sufficient on these facts.

Maupin argues that a lack of probable cause to arrest Johnson and Smith for violating KY. REV. STAT. § 218A.350 (trafficking in a controlled substance) is not fatal. Instead, he believes the officer is saved from a Constitutional violation if the officer would have had probable cause to arrest the plaintiff for a lesser included offense. *Avery v. King*, 110 F.3d 12, 13 (6th Cir. 1997). In *Avery*, federal agents arrested a woman for forcibly impeding a law enforcement investigation. *Id*. at 13. Yet, the officers lacked probable cause for that charge, since the woman did not threaten to use force. *Id*. at 14. The officers were saved, though, because "proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity." *Id*. And there was probable cause in *Avery* to arrest the Plaintiff for violating a statute criminalizing the willful or knowing obstruction of law enforcement activities. *Id*. Since that statute was entirely subsumed within the charged offense, and since the arresting officers had sufficient probable cause to arrest the Plaintiff for that lesser offense, the Sixth Circuit held that there was no Fourth Amendment violation when the federal agents arrested the woman without probable cause for the more serious offense. *Id*. at 15.

Maupin argues that *Avery* is directly applicable to this case. Under his logic, there are at least two lesser included offenses that Maupin likely had probable cause for: attempting to traffic

in a controlled substance and trafficking in a simulated controlled substance.[5] Consistent with *Avery*, probable cause for either of those offenses would cure any lack of probable cause for the trafficking in a controlled substance charge.

Yet, the Sixth Circuit has expressly distinguished *Avery* from facts like those presently before the Court. In *Kuslick v. Roszczewski* the Court stated that:

> *Avery* involved an unlawful arrest claim arising out of a warrantless arrest, whereas [Plaintiff's] claims arise out of an arrest pursuant to a warrant procured through alleged falsifications. **There is good reason to treat qualified immunity differently in these distinct contexts**. In warrantless arrest cases such as *Avery*, an officer is confronted with a rapidly developing situation and makes the on-the-scene determination to arrest someone in the reasonable-but-mistaken belief that the arrestee committed a crime whose elements, it turns out later, were unmet, though the arrestee's conduct did satisfy the elements of a different crime. The officer's mistake in the *Avery* case is in no small part technical: he is correct in believing the arrestee susceptible to arrest, and mistaken only as to which crime the arrestee committed. **That officer is in a thoroughly different position than the [officer] here** . . . **who, from a position of safety and retrospective deliberation, decides to falsify details of the arrestee's conduct in a sworn statement made to a magistrate in order to obtain authorization for a retaliatory arrest**. Telling lies to a magistrate in order to concoct probable cause is no technical violation of the law, and qualified immunity surely does not require us to countenance such behavior, if indeed a jury concludes that is what occurred here.

*Kuslick v. Roszczewski*, 419 F. App'x. 589, 594 (6th Cir. 2011)(emphasis added);[6] *see also Kinkus v. Village of Yorkville*, 453 F. Supp. 2d 1009, 1015 (S.D. Ohio 2006)(distinguishing *Avery* on the same ground).

---

[5] KY. REV. STAT. § 506.010(1); KY. REV. STAT. § 218A.350.
[6] To the extent the Sixth Circuit is mixed on the question of whether probable cause for a lesser included offense cures a lack of probable cause for the offense charged, that is not unusual. Two other circuits say such lesser offense probable cause is not sufficient. *Johnson v. Knorr,* 477 F.3d 75, 83–84 (3d Cir. 2007); *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir. 1991). But one Circuit has held that it is sufficient. *Brooks v. City of* Aurora, 653 F.3d 478, 485 (7th Cir. 2011). Other courts have only ruminated on the subject. *See Harrington v. City of Council Bluffs, Iowa,* 678 F.3d 676, 683 (8th Cir. 2012) (Colloton, J., dissenting).

*Kuslick* is directly on point with Johnson and Smith's cases. Like *Kuslick*, Maupin had sufficient time to deliberate on the proper charge, and was not making a spur-of-the-moment decision in the field. And like *Kuslick*, Maupin signed a knowingly false statement under those unemotional conditions. Thus, consistent with *Kuslick*, *Avery*'s rule does not apply to this case. Instead, the Court should solely judge whether there was probable cause to charge Johnson and Smith with the offense of trafficking in a controlled substance, and not whether there may have been probable cause for lesser included offenses.

**E. Assault and battery claims.**

Plaintiffs also bring a state law claim for assault and battery against Maupin. They believe that Maupin assaulted and battered them when he arrested them without probable cause. The above conclusion that Maupin's arrest of Sanders was pursuant to probable cause decides this question in her case. *See* 6 Am. Jur. 2d Assault and Battery § 110 ("Police officers are privileged to commit a battery pursuant to a lawful arrest."). But the uncertainty on probable cause in Johnson and Smith's cases leaves this an open question.

Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). The intent required for these torts is only the intent to make the threat or to make contact; there need not be an intent to cause harm. *Vitale v. Henchey*, 24 S.W.3d 651, 657-58 (Ky. 2000); *Banks*, 39 S.W.3d at 480.

Because there is a triable issue of fact as to whether Maupin had probable cause to arrest Johnson and Smith, and because an unlawful arrest could ground a claim for assault and battery from Johnson and Smith, this Court will deny Maupin's motion for summary judgment on the assault and battery claims from Johnson and Smith. It will grant the motion as to Sanders, though.

## III. Conclusions

Therefore, having reviewed the matter, and being otherwise advised, **IT IS ORDERED** that:

1. Maupin's motion for summary judgment (Doc. 45 in 14-182) is GRANTED in part and DENIED in part as follows:

   a. Maupin's motion for summary judgment regarding plaintiff Miranda Sanders is GRANTED;
   b. Maupin's motion for summary judgment regarding plaintiffs Tara Johnson and Samantha Smith is DENIED.

2. Tara Johnson and Samantha Smith's motion for summary judgment (Doc. 24 in 14-183) is DENIED.

This 1st day of August, 2017.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge